# In the United States Court of Federal Claims

No. 24-2062
Filed: December 31, 2025

|  |  |
|---|---|
| FORT SAM ACQUISITION, LLC, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant,* | ) |
| | ) |
| | ) |

*Jeremy Daniel Burkhart*, Holland & Knight LLP, Tysons, VA, for Plaintiff. *Richard Ariel* and *Bailey C. McHale*, *of counsel*.

*Kyle Shane Beckrich*, Trial Attorney, Civil Division, United States Department of Justice, Washington, D.C., *with whom were Yaakov M. Roth*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Corinne A. Niosi*, Assistant Director, for the Government

## OPINION AND ORDER

Plaintiff Fort Sam Acquisition LLC ("Fort Sam") seeks damages from the United States for breach of contract under the Contract Disputes Act, 41 U.S.C. § 7104(b)(1) ("CDA"). The dispute centers on the meaning of a rent calculation provision in four ground leases on Joint Base San Antonio ("JBSA") between Fort Sam and the Department of the Air Force.[1]  Under these Ground Leases, Fort Sam is charged with developing the property, i.e., building and operating the facilities. Fort Sam then subleases the finished space back to the Government through separate agreements.

After a dispute over which expenses Fort Sam could deduct from its rent payments to the Air Force, Fort Sam and the Air Force amended the Ground Leases to replace the rent calculation with a methodology that incorporates certain terms from the related subleases. In the present dispute, Fort Sam again asserts that it is entitled to offset certain expenses from its rent payments to the Air Force, even though the amended Ground Leases no longer provide for such

---

[1] Fort Sam is the successor in interest to the original lessee in the Ground Leases, which is the lessor in the Subleases. ECF No. 1 ¶¶ 5-10. The Air Force is the successor in interest to the original lessor. *Id*. For ease of reference, the court refers to Fort Sam and the Air Force unless the specific predecessor in interest is relevant to the court's analysis.

deductions.  When read together with the terms of the Subleases that the amended Ground Leases specifically incorporate, the Ground Leases do not allow Fort Sam to deduct the claimed expenses from the rent it owes the Air Force.  Therefore, the court grants the Government's motion to dismiss the complaint for failure to state a claim.

## I.      Background

### A.      Ground Leases at Joint Base San Antonio.

On June 21, 2001, the U.S. Army Corps of Engineers (the "Army") entered into three fifty-year leases with Fort Sam Houston Redevelopment Partners Ltd. ("FSH Redevelopment Partners") for properties on Fort Sam Houston, which later became JBSA.  ECF No. 1 ¶¶ 5-6; ECF No. 1-2; ECF No. 1-9; ECF No. 1-12.  On September 28, 2007, the parties entered into another fifty-year lease agreement for property on JBSA with the same terms.  ECF No. 1 ¶¶ 5-6; ECF No. 1-16.  The court refers to these leases collectively as the "Ground Leases."

The Ground Leases provided that FSH Redevelopment Partners would develop the property and sublease the finished space.  ECF No. 1 ¶ 5.  FSH Redevelopment Partners' rent would be based on the total amount of revenue collected under the subleases minus certain expenses.  *Id.* ¶¶ 11-12.  Specifically, the rent consisted of varying percentages of the "Net Cash Flow" on an annual basis: 10% for years 1-13; 25% for years 14-25; 45% for years 26-30; and 50% for years 31-50.  *Id.*; ECF No. 1-2 at 3.  The parties defined "Net Cash Flow" to mean "Gross Receipts" minus (i) cash operating expenses; (ii) debt service payments; (iii) equity fund payments; (iv) cash reserves, under certain circumstances; and (v) a $1.5 million risk preference payment to the Lessee.  ECF No. 1-2 at 3.  "Gross Receipts," in turn, was defined as "all revenues collected by the Lessee in connection with the Lessee's leasehold interest in the Lease Premises . . . ."  *Id.*  Although rent calculation under the Ground Leases was determined by a relatively simple formula, the parties soon disagreed as to the application of that formula.

In 2003, BAMC Redevelopment Partners, Ltd. ("BAMC") became FSH Redevelopment Partners' successor-in-interest to the Ground Leases.  ECF No. 1 ¶ 7.  The Air Force took over the Ground Leases from the Army in 2010.  *Id.* ¶ 8.

Sometime around 2015, one of BAMC's members bought out another's interest in the Ground Leases.  ECF No. 1 ¶ 13.  It then attempted to pass on the cost of the buy-out to the Air Force as a "payment on . . . equity funds."  *Id.*  This move sparked a "discussion over the equity expenses [that] eventually resulted in amendment to the calculation of the Lessee's rent owed under the Ground Leases."  *Id.*; *see also* ECF No. 8 at 3-4.

### B.      The 2017 Amendments.

In 2017, the parties to the Ground Leases replaced the rent calculation formula through a series of amendments (the "2017 Amendments").  *See* ECF No. 1 ¶¶ 13-16; ECF No. 1-4; ECF No. 1-10; ECF No. 1-13; ECF No. 1-17.  These amendments replaced the prior calculations with a new, two-step process that governs the present dispute.

First, rent is based on "Sublease Rents," which are calculated by multiplying each sublease's rentable square footage by its "Net Rental Rate." *See*, *e.g.*, ECF No. 1-4 at 3-4.  The amendments provide that "the Net Rental Rates under the current subleases are set forth in Exhibit A." *Id.*  For each sublease in existence at the time, Exhibit A lists its corresponding "Net Rental Rate Per Ft.," a figure determined by subtracting the "Base Operating Expenses Per Ft." from the "Base (Gross) Rent Per Ft." *Id.* at 10.  Fort Sam must submit its yearly rent by January 10 of the following year with "an updated copy of Exhibit A." *Id.* at 4.  The Parties agree that Exhibit A was meant to serve as a template for future rent submissions.  ECF No. 9 at 22; ECF No. 14 at 13.

Second, the 2017 Amendments required no rent until 2023.  ECF No. 1-4 at 3.  After that, Fort Sam must pay the Air Force 5% of the "Sublease Rents," as determined in step one, until 2031, and 14% from 2032 until the end of the term. *Id.*  This marked a significant reduction in rent percentage from the original Ground Leases, which would have required 25% of the "Net Cash Flow" until 2025; 45% until 2030; and 50% for the remainder of the lease.  ECF No. 1 ¶¶ 13-16; ECF No. 1-2 at 2; ECF No. 1-9 at 2; ECF No. 1-12 at 2; ECF No. 1-16 at 2.

In sum, the amended Ground Leases first require the Parties to multiply the total rentable area under each sublease with the applicable Net Rental Rate.  Fort Sam must then pay varying percentages of that total in rent at the end of each year.

C.    **Fort Sam's Subleases.**

After the 2017 Amendments, Fort Sam took over the Ground Leases as lessee.  ECF No. 1 ¶ 9.  Fort Sam's predecessors in interest entered into eight separate subleases for property on JBSA:

- Sublease No. HQ 2004-REZC-061, ECF No. 1-6;

- Sublease No. DACA63-5-07-0484, ECF No. 1-18;

- Sublease No. DACA63-5-10-0039, ECF No. 1-19;

- Sublease No. DACA63-5-13-0171, ECF No. 1-11;

- Sublease No. DACA63-5-15-0003, ECF No. 1-7;

- Sublease No. DACA63-5-20-0002, ECF No. 1-15;

- Sublease No. USAF-AETC-JBSF-21-2-0384, ECF No. 1-14; and

- Subleases No. USAF-AETC-JBSF-22-1-0178, ECF No. 1-5.

ECF No. 1 ¶ 19.  The court refers to these agreements collectively as the "Subleases."

As an illustration of the Subleases' rent provisions, Sublease No. DACA63-5-15-0003 requires the Government, as sublessee, to pay Fort Sam "annual Rent (defined as based rent plus operating expenses)" as set forth in the following table:



ECF No. 1-7 at 3.  The sublease's "Net Rent" rate of $21.50 matches its Net Rental Rate in Exhibit A of the 2017 Amendments.  ECF No. 1-4 at 3.

The "Full Service Rent" is not set in stone.  After the first year, the Government must "pay for actual increases in real estate taxes and operating expenses as listed on Exhibit F, Lessor's Annual Cost Statement."  ECF No. 1-7 at 4.  Exhibit F lists 53 categories of expenses, broken down on a square foot basis.  ECF No. 1-8.  All seven other subleases similarly require the Government to pay for Fort Sam for its operating expenses on an annual basis.  *See* ECF No. 1-5 at 6-10; ECF No. 1-6 at 3; ECF No. 1-18 at 3; ECF No. 1-19 at 4-5; ECF No. 1-11 at 3-4; ECF No. 1-15 at 3-4; ECF No. 1-14 at 6-10.

### D.    Net Rental Rate Dispute.

On January 10, 2023, a few months after taking over the Ground Leases, Fort Sam submitted its first rent calculations for 2022.  ECF No. 1 ¶¶ 27-28.  Fort Sam calculated rent by (1) multiplying each Sublease's rentable area by its Net Rental Rate, (2) adding these amounts together for each Ground Lease, and (3) deducting "Owner Expenses" from the sum produced by step two.  *See* ECF No. 1-22.  The Air Force did not object to Fort Sam's calculations, although no rent was owed in 2022 per the terms of the 2017 Amendments.  ECF No. 1 ¶ 30.[2]

On January 8, 2024, Fort Sam submitted its rent calculations for 2023 in the same manner as the year prior.  *Id.* ¶ 31; ECF No. 1-34.  As part of its submission, Fort Sam listed four categories of deductible "Ownership Expenses": (i) payroll, (ii) debt service, (iii) legal fees, and (iv) capital expenses.  ECF No. 1 ¶ 35; ECF No. 1-34 at 2.  Fort Sam determined that it owed the

---

[2] There is no argument that the Air Force's failure to object to Fort Sam's calculations constituted a waiver by the Air Force.

Government just $55,016 after deducting $5,392,022.00 in "Owner Expenses." ECF No. 1 ¶¶ 33, 40; ECF No. 1-34. This time, the Air Force objected to Fort Sam's rent calculations and asserted that Fort Sam owed $552,310. ECF No. 1 ¶¶ 38-41.[3] The Air Force also demanded that Fort Sam pay an additional $13,096.67 in interest. *Id*. ¶¶ 42, 46. Fort Sam paid the amount under protest and submitted a certified claim for reimbursement of the $565,506.67. *Id.* ¶ 47. Fort Sam filed suit when the Air Force did not respond within sixty days. *Id*. ¶¶ 48-50.

## II.    Standard of Review

To establish a breach of contract claim, the plaintiff must show at minimum "(1) an obligation or duty arising out of the contract and (2) factual allegations sufficient to support the conclusion that there has been a breach of the identified contractual duty." *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed. Cir. 2014) (citing *Hercules, Inc. v. United States*, 24 F.3d 188, 198 (Fed. Cir. 1994); *San Carlos Irr. and Draining Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989)). Under Rule 12(b)(6), a motion to dismiss for failure to state a claim is appropriate when "the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When deciding a motion under Rule 12(b)(6), the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). But this obligation does not extend to legal determinations, like contract interpretation. *Sunrez Corp. v. United States*, 157 Fed. Cl. 640, 649 (2022). Contract interpretation is a matter of law and may be addressed by the Court in resolving a motion to dismiss. *Bell/Heery*, 739 F.3d at 1330 (citing *Southern California Edison v. United States*, 58 Fed. Cl. 313, 321 (2003)).

## III.    Discussion

This case turns on whether the Ground Leases permit Fort Sam to deduct expenses from the Net Rental Rates in calculating the rent it owes the Air Force. Fort Sam interprets the Sublease Rents definition to mean that it may deduct "ownership, management, and operation" expenses *from* the Net Rental Rates. ECF No. 1 ¶ 57. The Air Force argues that the Sublease Rents definition is narrative; it explains that deductions for "ownership management, and operation" expenses are *already baked into* the Net Rental Rate. ECF No. 8 at 9-13.

---

[3] The documents contain some apparent errors. The Air Force demanded "Five Hundred and [sic] Fifty-Two Thousand, Three Hundred Ten Dollars and no Cent ($552.310.00)" and included a table showing its calculation of that amount. But that table indicates that the Air Force believed Fort Sam owed $552,130, not $552,310. ECF No. 1-26 at 2. Because Fort Sam alleges it paid $552,310 under protest and the Air Force accepted that payment, ECF No. 1 ¶ 45; *see also* ECF No. 1-29 at 3, the court assumes that is the correct number for the purpose of deciding this motion. To be clear, the difference between these amounts has no impact on the court's decision.

The court begins with the plain language of the written agreement. *Textron Defense Sys, v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998). The court's task is to "interpret the contract in a manner that gives meaning to all of its provisions and makes sense." *McAbee Const. Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). "If the language is sufficiently clear, [the court's] inquiry ends there." *Textron Defense Sys.*, 143 F.3d 1465, 1468 (citing *Craft Mach. Works, Inc. v. United States*, 926 F.2d 1110, 1113 (Fed.Cir.1991)).

This dispute is about the rent owed under the Ground Leases. Under the 2017 Amendments, Fort Sam (as lessee) must pay the Air Force (as lessor) a certain percentage of the "Sublease Rents" that the Government pays to Fort Sam as rent under the Subleases. ECF No. 1-4 at 3. The 2017 Amendments define "Sublease Rents" as "the total of the amounts determined by multiplying the rentable area of the subleased premises as stated under each sublease by the Net Rental Rate applicable to the sublease." ECF No. 1-4 at 2-3; ECF No. 1-10 at 2-3; ECF No. 1-13 at 2-3; ECF No. 1-17 at 2-3. In other words, the Sublease Rents are the product of simple multiplication—the rentable square footage multiplied by the Net Rental Rate. And the amended Ground Leases define "Net Rental Rate" as "the rental rate per square foot of the sublease premises which is stated in the sublease less any amount(s) allocated to expenses incurred by [Fort Sam] relating to its ownership, management and operation of the subleased premises." ECF No. 1-4 at 2-3; ECF No. 1-10 at 2-3; ECF No. 1-13 at 2-3; ECF No. 1-17 at 2-3. Finally, the amendments provide that "[t]he Net Rental Rates under the current subleases are set forth in Exhibit A to this Amendment." ECF No. 1-4 at 2-3; ECF No. 1-10 at 2-3; ECF No. 1-13 at 2-3; ECF No. 1-17 at 2-3.

Both Parties claim this plain language supports their position. *See* ECF No. 8 at 9-13; ECF No. 9 at 13. They are in litigation because their views of the plain language are irreconcilable. The Air Force argues that "the Ground Leases unambiguously establish that the 'Net Rental Rate' is the specific rate identified in the Ground Lease and subleases." ECF No. 8 at 9-10. The Air Force highlights the reference to Exhibit A and notes that the Net Rental Rates listed therein "match the net rent rates set forth in each sublease." *Id.* at 10. Fort Sam takes a different view—that it may deduct expenses from the amounts it owes under the Ground Leases. ECF No. 1 ¶¶ 57, 68-69; ECF No. 9 at 13.

The Ground Leases make clear that the Net Rental Rate refers to the specific amounts stated in the Subleases. Start with the Net Rental Rate definition: "The term 'Net Rental Rate' shall mean the rental rate per square foot of the sublease premises which is stated in the sublease less any amount(s) allocated to expenses incurred by lessee relating to its ownership, management and operation of the subleased premises." ECF No. 1-4 at 4. The court must resolve two questions. First, what are the "rental rate[s] per square foot of the sublease premises which is stated in the sublease[s]?" Second, what are the "amount(s) allocated to expenses incurred relating to [Fort Sam's] ownership, management and operation of the subleased premises?"

Recall that all the Subleases, albeit through different language, require that the Government compensate Fort Sam for its yearly "Operating Expenses" (sometimes referred to as "Additional Rent"). ECF No. 1-7 at 3; ECF No. 1-5 at 6-10; ECF No. 1-6 at 3; ECF No. 1-18 at 3; ECF No. 1-19 at 4-5; ECF No. 1-11 at 3-4; ECF No. 1-15 at 3-4; ECF No. 1-14 at 6-10. And all the Subleases provide a "Base Rent" (sometimes referred to as "Full Service Rent"), which is

the total amount owed by the Government to Fort Sam.  ECF No. 1-7 at 3; ECF No. 1-5 at 6-7; ECF No. 1-6 at 3; ECF No. 1-18 at 3; ECF No. 1-19 at 4-5; ECF No. 1-11 at 3-4; ECF No. 1-15 at 3-4; ECF No. 1-14 at 6-10.  And all but two of the Subleases use the term "Net Rent" to describe the difference between the two amounts.  ECF No. 1-7 at 3; ECF No. 1-5 at 5-6; ECF No. 1-19 at 4; ECF No. 1-11 at 3; ECF No. 1-14 at 5; ECF No. 1-15 at 3.  Thus, despite the inconsistent terminology, all the Subleases calculate rent the same way: the Net Rental Rate equals "Base Rent" minus "Operating Expenses."  That some of the Subleases do not explicitly use the term "Net Rental Rate" is immaterial to the fact that the rent formulas are identical.

The Ground Leases' Net Rental Rate definition simply recounts the process described above.  For each Sublease, the Net Rental Rates represent (1) the "Base Rent" (i.e., "the rental rate[s] per square foot which is stated in the sublease") *less* (2) Fort Sam's "Operating Expenses" (i.e., "amount(s) allocated to expenses… relating to [its] ownership, management, and operation of the subleased premises").  In other words, the Ground Leases' definition narrates how the Net Rental Rates are reached in the subleases; it does grant either Party the right to unilaterally re-calculate those rates.  This interpretation is confirmed by Exhibit A to the 2017 Amendments, which lists each Sublease's "Base (Gross) Rent Per Ft.," "Operating Expenses Per Ft.," and "Net Rental Rate Per Ft."  The figures listed therein align squarely with the rent formula as described in the narrative definition and provided in the subleases.

With this understanding of the terms of the various leases, the overall scheme for rent under the Ground Leases makes sense.  The Air Force collects a percentage of the Net Rental Rate for each Sublease on an annual basis.  And if Fort Sam experiences any increases in Operating Expenses, the Subleases' Base Rent that the Government pays Fort Sam increases to cover those costs.  But such variations in costs cannot change the Subleases' Net Rental Rates, which are the basis of rent under the Ground Leases.  It follows that the rent owed under the Ground Leases is independent of any costs Fort Sam incurs in operating the subleased premises.  In sum, the Government foots the bill for Fort Sam's costs *at the sublease level*, not at the Ground Lease level.

None of Fort Sam's arguments to the contrary survive scrutiny.  First, Fort Sam argues that the Air Force's interpretation renders the entire Sublease Rents definition superfluous "insofar as its calculation ignore [sic] the clause specifically allowing for deductions."  ECF No. 9 at 20.  This argument is flawed on a number of grounds.  For one, it is inaccurate.  As explained above, Fort Sam erroneously reads this provision to allow for deductions from the Ground Lease rent rather than as an explanation of how the Parties calculate the Sublease Rent.  Recognizing that the 2017 Amendments' definition of the Net Rental Rate is a narrative description of how the Sublease Rents are calculated does not render it superfluous.  Indeed, the definition specifically incorporates the Subleases and Exhibit A confirms that the 2017 Amendments incorporate the rental rates set forth in the Subleases.

Fort Sam's superfluity argument highlights a fatal flaw in its own interpretation.  Worse than rendering a portion of the contract redundant, Fort Sam's reading renders the contract internally inconsistent.  By interpreting Net Rental Rate to allow for expense deductions *after* multiplying each Sublease's Net Rental Rate by its rentable area, Fort Sam necessarily argues that Net Rental Rate means the Net Rental Rate minus certain expenses.  Logical absurdities aside, this argument still could not be squared with the fact that Exhibit A lists the Net Rental

Rates as fixed, rather than variable, figures.  ECF No. 1-4 at 10.  The court declines to give Net Rental Rates a meaning that conflicts with the Net Rental Rates as they are actually defined.

Second, and relatedly, Fort Sam's argument is based on the false premise that the Air Force's reading "denies Fort Sam any deductions."  ECF No. 9 at 20.  Indeed, Fort Sam repeats this grievance throughout its briefings.  *See, e.g*., ECF No. 1 at 16; ECF No. 9 at 2, 20.  But Fort Sam overlooks the critical fact that the Government is already required to compensate Fort Sam's operating expenses at the sublease level.  Again, as Exhibit A illustrates, each Sublease requires additional rent to cover Fort Sam's yearly operating expenses.  *See* ECF No. 1-4 at 10.  Thus, the Base Rents undoubtedly serve to compensate Fort Sam's expenses— just not at the Ground Lease level.  Fort Sam's real complaint is that the Air Force will not allow *additional* expense deductions, i.e., deductions beyond those allowable under the Subleases.  That is not a breach of the leases, it is a dissatisfaction with the terms of the agreement.

Third, while Fort Sam parses the language of the Sublease Rents definition for support, it fails to meaningfully address the portion that provides the most clarity: "The Net Rental Rates under the current subleases are set forth in Exhibit A to this Amendment."  ECF No 1-4 at 4.  And more than merely listing the Net Rental Rates, Exhibit A shows that each Sublease's Net Rental Rate is the result of subtracting its "Base Operating Expenses Per Ft." from its "Base (Gross) Rent Per Ft."  Put differently, Exhibit A illustrates the point that the Net Rental Rates are the Subleases' gross rental rates "less [the] amount(s) allocated to expenses incurred by [Fort Sam]."  *Id.*  There is no further calculation at the Ground Lease level.

Fourth, Fort Sam ignores the fact that the 2017 Amendments were prompted by a dispute over the allowability of certain financing expenses incurred by one of Fort Sam's predecessors in interest.  The parties amended the Ground Leases for a reason—to avoid future disputes over the Ground Lease deductions.  Prior to the 2017 Amendments, there were several expenses that could be deducted from the "Net Cash Flow," which was all the revenue Fort Sam received from the subleases, when determining the Ground Lease rents.  *See* ECF No. 1 ¶¶ 11-12.  But Fort Sam would have had to pay a much larger percentage of that Net Cash Flow to the Government in rent (up to 50%).  *Id.*  After the 2017 Amendments, however, the Ground Lease rent calculus changed dramatically.  Fort Sam now pays a much smaller percentage of the Net Rental Rate (up to 14%) and there are no longer deductions at the Ground Lease level.  The 2017 Amendments thus reflect a principled compromise that attempted to reduce the risk of confusion over deductions while ensuring Fort Sam compensation for its expenses.  Fort Sam's interpretation ignores this history and would allow itself to pay a smaller percentage of the Net Rental Rate *and* continue to deduct expenses that were removed from the contract.  Indeed, the categories of "Owner Expenses" claimed by Fort Sam in its rent submissions—(i) payroll, (ii) debt service, (iii) legal fees, and (iv) capital expenses—are referenced nowhere in the amended Ground Leases.[4]  Debt service payments were specifically allowed as deductible expenses prior to the

---

[4] Several of these expenses are specifically addressed in the subleases.  For example, two subleases require the Government to cover Fort Sam's payroll as part of the operating expenses.  ECF No. 1-5 at 7 (§ 3.3.1(i)); ECF No. 1-14 at 7 (§ 3.3.1(i)).  Legal fees are explicitly prohibited, so it makes little sense that those expenses could be deducted from the Ground Lease rents without a specific allowance.  ECF No. 1-5 at 9 (§ 3.3.2(xi)); ECF No. 1-14 at 9 (§ 3.3.2(xi)).  Capital Expenses are also prohibited, similarly undermining the notion that they could be

2017 Amendments, which indicates they are now prohibited given their removal from the Ground Leases. While Fort Sam would certainly like the contract to continue to allow deductions for things that the parties removed from the Ground Leases, it does not provide any basis to conclude that is what the parties intended. *See Winstar Corp. v. United States*, 64 F.3d 1531, 1540 (Fed. Cir. 1995) ("[A] principal objective in deciding what contractual language means is to discern the parties' intent at the time the contract was signed.").

Fifth, Fort Sam's assertion that the Subleases cannot control the interpretation of the Ground Leases is misguided. The court's interpretation does not allow the Subleases to control the Ground Leases, it recognizes that the 2017 Amendments require the consideration of the Subleases—the amendments specifically incorporate the Subleases. And it recognizes that when harmonized, the Ground Leases and Subleases require the Government to fully compensate Fort Sam for its allowable expenses under each Sublease. Nor is it a problem that the Subleases may not be uniform. The parties are free to agree that certain expenses be allowable in some Subleases but not in others if they choose. That does not render the scheme to compensate expenses under the Subleases improper in any way.

Finally, Fort Sam's alternative argument that this dispute is a case of "competing, reasonable contract interpretations," and therefore inappropriate for resolution on a motion to dismiss fails. ECF No. 9 at 11. As the court has explained, Fort Sam's interpretation of the Ground Leases is facially unreasonable. Perhaps the most glaring flaw in Fort Sam's argument is the methodology it employs. Even under its own interpretation, Fort Sam's rent calculations simply do not make sense. Recall that Fort Sam's rent formula (1) multiplies each Sublease's rentable area by its Net Rental Rate, (2) adds the totals from step one together for each Ground Lease, then (3) deducts "Owner Expenses" from the sum produced by step two. *See, e.g.*, ECF No 1-33 at 2. This means that Fort Sam deducts from the already-discounted Net Rental Rates. Also note that Fort Sam's method clumps the subleases together and deducts expenses wholesale for each Ground Lease. But even Fort Sam's own interpretation of Net Rental Rate would seemingly require a *rate*–that is, one tied to each Sublease's rentable area and expenses.

And despite conceding to the fact that Exhibit A in the 2017 Amendments was meant as a template for each year's rent calculations, ECF No. 9 at 22, Fort Sam's methodology required it to alter that template. ECF No. 1-24 at 2. Although Fort Sam mirrors the general format of the 2017 Amendments' Exhibit A, it materially changes it by adding two new items: "Owner Expenses" and "Net Rental Rate for Ground Rent Calculation." But these terms are found nowhere within the Exhibit A template or elsewhere in the amended Ground Leases. This sleight of hand is revealing. The need to alter the prescribed rent template should have signaled to Fort Sam that its rent formula had veered off course.

In the end, there is just one reasonable interpretation of the Ground Leases: rent is based on the Net Rental Rates in the Subleases, and Fort Sam is prohibited from unilaterally deducting expenses from the rent it owes under the Ground Leases. This conclusion is only bolstered by the numerous issues raised by Fort Sam's attempts to interpret the Ground Leases differently.

---

deducted from the Ground Lease rents. ECF No. 1-5 at 8 (§ 3.3.2(i)); ECF No. 1-14 at 8 (§ 3.3.2(i)).

Because Fort Sam cannot establish a contractual obligation to accept these deductions, it has no claim for breach of contract.

## IV.    Conclusion

For the reasons stated above, the court **GRANTS** the Government's Motion to Dismiss, ECF No. 8.  The Clerk's Office is directed to enter judgment accordingly.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge
